# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONER'S IN ACTION'S UNDER 42 U.S.C. §1983

ROBERT JAMES KEATON,
Inmate #R38757
    *PLAINTIFF,*

                                         **AMENDED COMPLAINT**

          *v*                  **CASE NO:** <u>4:19-cv-00025-RH-HTC</u>

JULIE L. Jones; Secretary
J. COKER; Warden
KARLENE A. MARCHANT; Classification Supervisor
TIMOTHY R. NOLES; Colonel
TARLOS THOMAS; Captain
NATHAN STRAWN ; Captain
DAWSEY; Captain
JACKSON; Lieutenant
CEDRIC Anthony; Sergeant
*Defendants.*
_____/

Provided to Suwannee
Correctional Institution on

MAY 2 1 2019

for mailing, by_____

A.R.  FILED USDC FLND TL
MAY 28 '19 PM2:19

**I. PLAINTIFF:**

| | |
|---|---|
| Name Of Plaintiff: | Robert James Keaton |
| Inmate Number: | R38757 |
| Prison Or Jail: | Prison |
| Mailing address: | Suwannee Correctional Institution-Main Unit |
| | 5964 U.S. Highway 90 |
| | Live Oak, FL 32060 |

**II. DEFENDANT(S):**

| | |
|---|---|
| 1. Defendant's Name: | Julie L. Jones |
| Official Position: | Secretary; Florida Department of Corrections |
| Employed at: | Central Office |
| Mailing address: | 501 South Calhoun Street |
| | Tallahasse, FL 32399 |

| | |
|---|---|
| 2. Defendant's Name: | J. Coker |
| Official Position: | Warden |
| Employed at: | Wakulla Correctional Institution |
| Mailing address: | 110 Melaleuca Drive |
| | Crawfordville, FL 32327 |

| | |
|---|---|
| 3. Defendant's Name: | Karlene A. Marchant |
| Official Position: | Classification Supervisor |
| Employed at: | Wakulla Correctional Institution |
| Mailing address: | 110 Melaleuca Drive |
| | Crawfordville, FL 32327 |

| | |
|---|---|
| 4. Defendant's Name: | Timothy R. Noles |
| Official Position: | Colonel |
| Employed at: | Wakulla Correctional Institution |
| Mailing address: | 110 Melaleuca Drive |
| | Crawfordville, FL 32327 |

| | |
|---|---|
| 5. Defendant's Name: | Tarlos Thomas |
| Official Position: | Captain |
| Employed at: | Wakulla Correctional Institution |
| Mailing address: | 110 Melaleuca Drive |
| | Crawfordville, FL 32327 |

6. Defendant's Name:    Nathan Strawn
 Official Position:    Captain
 Employed at:    Wakulla Correctional Institution
 Mailing address:    110 Melaleuca Drive
    Crawfordville, FL 32327

7. Defendant's Name:    Dawsey
 Official Position:    Captain
 Employed at:    Wakulla Correctional Institution
 Mailing address:    110 Melaleuca Drive
    Crawfordville, FL 32327

8. Defendant's Name:    Jackson
 Official Position:    Lieutenant
 Employed at:    Wakulla Correctional Institution
 Mailing address:    110 Melaleuca Drive
    Crawfordville, FL 32327

9. Defendant's Name:    Cedric Anthony
 Official Position:    Sergeant
 Employed at:    Wakulla Correctional Institution
 Mailing address:    110 Melaleuca Drive
    Crawfordville, FL 32327

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997 e (a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV. PREVIOUS LAWSUITS

A. Plaintiff has **not** initiated other actions in **State Court** dealing with the same or similar facts / issues involved in this action.

3.

B. Plaintiff has **not** initiated other actions in **Federal Court** dealing with the same or similar facts/ issues involved in this action.

C. Plaintiff has **not** initiated other actions (including those listed above in (a) and (b) in either **State or Federal Court** that relate to the fact or manner of his incarceration (including habeas corpus petitions) or the conditions of his confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong).

D. Plaintiff has **not** had any actions in **Federal Court** dismissed as frivolous, malicious, failing to state a claim, or prior to service.

## V. STATEMENT OF FACTS

1. On May 3, 2018 during medical rounds in confinement (between 4 p.m. and 5 p.m.) plaintiff started kicking repeatedly on his cell door due to confinement staff covering his window on the cell door with a magnet.

2. This magnet obstructed staff's view as well as the nurse's view into plaintiff's cell.

3. In response to plaintiff kicking on his cell door, defendant **Thomas** was summoned by confinement staff to cell 2103 of "J" dormitory where plaintiff was housed alone. Upon defendant **Thomas'** arrival to plaintiff's cell, he removed the magnet from the window and discovered that plaintiff had a personal picture in the upper left corner of the window on the cell door.

4. This picture was a photo of plaintiff's mother which was smaller than the state issued identification card.

5. This did not obstruct staff's view into plaintiff's cell.

6. Defendant **Thomas** stated to plaintiff "take that shit down." Plaintiff immediately complied with this verbal order, but stated to defendant **Thomas,** "I don't know who the fuck you think your talking to like that."

7. After defendant **Thomas** had resolved the problem of the plaintiff causing a disturbance on the wing by kicking on the cell door, he ordered the plaintiff to sit

down on his bunk. Plaintiff immediately complied with this order, however within the next 30 to 45 seconds, defendant **Thomas** ordered plaintiff to come to the flap and submit to hand restraints to which the plaintiff complied.

8. Plaintiff was then placed in the shower (J-dorm-quad 2) and it was at this time that plaintiff was advised that he would be placed on property restriction.

9. At no point did plaintiff exhibit any self-injurious behavior, nor did he attempt to destroy any state property or equipment.

10. Defendant **Thomas** then ordered his staff to remove all property from plaintiff's cell, staff complied with this order, leaving only a state issued mattress and pillow in plaintiff's cell. When this task had been completed, all staff exited the quad with plaintiff's personal property so that it could be inventoried.

11. Minutes later while plaintiff was still locked inside of the shower, defendant **Thomas** returned to the quad alone and entered plaintiff's cell. He then personally removed the state issued mattress and pillow, leaving plaintiff's cell completely empty.

12. Upon exiting plaintiff's cell, defendant **Thomas** began to sing the words "somebody's got to win, somebody's got to lose" several times while looking directly at plaintiff as he displayed a smile on his face.

13. Before exiting the shower, staff ordered plaintiff to "strip" down to his boxers to which he complied. Plaintiff was then placed back in his cell wearing only boxers, which was his only means of clothing.

14. "J" dormitory is climate controlled.

15. The lack of heat in the cell was "severe" enough that it produced physical discomfort for plaintiff. This caused plaintiff to continuously tremble, which subsequently deprived plaintiff of sleep.

16. With plaintiff being denied articles of personal hygiene and having no sheets, blanket, clothing (only boxers), or a state issued mattress and pillow deprived him of basic human needs while housed in confinement.

17. Defendant **Marchant** (acting duty warden at the time of incident) and defendant **Noles** authorized this property restriction with the "specific" provisions

5.

described in paragraphs (10) and (16) to remain intact for 72 hours as evidenced by property restriction form. **See Exhibit "A"**

18. Without defendant's **Marchant** and **Noles** authorization, this property restriction would never have taken place.

19. Defendant **Strawn**, defendant **Jackson** (acting O.I.C) and defendant **Dawsey**, all did their daily confinement rounds in "J" dorm quad 2 on their respective shift's during the duration of plaintiff's property restriction.

20. Observing the plaintiff being deprived of basic human needs, the defendant listed in paragraph (19) failed to take the necessary steps to remedy the physical conditions of plaintiff's confinement by either making a full written report of this and submitting it to a superior officer or taking matters into their own hands and alleviating the conditions plaintiff endured due to the fact that they had knowledge of this violation that is "clearly established".

21. During the duration of this property restriction, plaintiff laid on the floor near the cell door to try to stay warm. Plaintiff was essentially forced to lay on the floor due the fact that the steel bunk was unbearably cold, and used his common sense to come to a conclusion that the floor would absorb is body heat better and ultimately keep him warm as possible.

22. On May 6, 2018 between 1 A.M. and 3 A.M., plaintiff went into an epileptic seizure while asleep on the floor.

23. The inmate housed in cell (2102) next to plaintiff began to kick on his cell door due to him hearing and feeling plaintiff banging on the bunk. The banging he felt was caused by plaintiff hitting his head and face on the footlocker which is attached to the bunk closest to the door.

24. Cells 2102 and 2103 bunks are bolted together; therefore any hard vibrations will be felt next door.

25. Upon arrival at plaintiff's cell, defendant **Dawsey** and his staff observed plaintiff stretched out on the floor incoherent. They then entered plaintiff's cell, handcuffed him and reeled him in a wheelchair to the nursing station inside the dorm.

26. When plaintiff became fully conscious he advised the nurse that he had a migraine headache, that his left eye hurt really bad, and that he had bitten down hard on his tongue; causing it to bleed. After plaintiff's vitals were taken, the nurse advised him to go lay down to alleviate some of the pain and told him that his prescribed seizure medication (Dilantin) would be arriving shortly.

27. Plaintiff was then placed back in his cell under the same conditions.

28. When this property restriction was over (exceeded 72 hours) plaintiff immediately signed up for sick call complaining about having no vision out of his left eye, having a small abrasion above this eye, and experiencing lower middle back pain.

29. Plaintiff was seen by medical on (May 8, 2018) about these conditions, but was only given pain medication. Plaintiff signed up for sick call on two more occasions (May 13, 2018 and May 17, 2018) still complaining about having no vision in his left eye and experiencing lower back pain.

30. After plaintiff's repeated complaints about his left eye, he was referred to see an outside opthalmologist. On May 24, 2018 the opthalmologist confirmed that the plaintiff had suffered a "detached retina" due to him banging his left eye against the footlocker during his epileptic seizure on May 6, 2018.

31. Due to the seriousness of this injury, the opthalmologist immediately scheduled plaintiff for surgery, which took place eleven days later on June 4, 2018.

32. Plaintiff was discharged from the infirmary @ Wakulla C.I.- main unit and relocated back to "J" dormitory @ Wakulla C.I. –Annex on June 14, 2018.

33. Within five minutes of plaintiff's entry into "J" dorm, a reactionary use of force was utilized on him which took place in the sallyport area at the entrance of quad two.

34. Defendant's **Thomas** and **Anthony** participated in this "use of force". Plaintiff was also black boxed with waist chains as well as shackled during this entire "use of force".

35. This reactionary use of force was initiated due to plaintiff declaring a medical emergency and sitting on the ground. When plaintiff did not get up, defendant **Anthony** dove on top of plaintiff.

7.

36. After this, plaintiff was dragged thirty to forty feet to the holding cell. Once inside, plaintiff was kicked in his surgically repaired eye[1], had his head hit several times on the steel bench inside of the holding cell, and defendant's **Thomas** and **Anthony** repeatedly slammed the steel holding cell door against plaintiff's legs when he failed to move them.

37. Nearly ten minutes had elapsed before defendant **Thomas** ordered his staff to grab the "use of force" camera.

38. Plaintiff was examined by medical staff to document his injuries from this "use of force" mere moments before he was emergency transferred to Union Correctional Institution.

39. Plaintiff did not receive any disciplinary reports for the incidents on May 3, 2018 or June 14, 2018 to reasonably try and justify him being deprived of basic human needs, or justify the "excessive force" used on him.

40. Plaintiff went to see the ophtalmologist on August 2, 2018 for a follow-up on his left eye and was informed that since he had such a "big" retinal tear, he would most likely never regain any vision in this eye. This diagnosis had a "perpetual" and damaging effect on plaintiff's mental state of mind.

41. The ADA (Americans with Disabilities Act) has now officially declared the plaintiff as being "legally blind" due to him being diagnosed with this permanent eye injury.

42. On May 7, 2018 between 2:20 p.m. and 2:30 p.m. , inmate Arron Vestal housed in cell 2208 of "J" dorm –quad 2 had his window completely covered with paper. Due to inmate Vestal not complying with multiple orders to take the paper down, defendant **Thomas** was summoned to his cell and gave inmate Vestal several orders to take the paper down, all to no avail. Defendant **Thomas** then opened the flap, stuck his hand in, and snatched the paper off of the window so that he could get a visual inside Vestal's cell. However, this inmate was not placed on property restriction.

---

[1] On August 2, 2018 the opthalmologist confirmed that a piece of plaintiff's left retina had indeed become unattached. This was plaintiff's first follow-up since June 6, 2018. This was the most detrimental injury that plaintiff received from this "use of force".

43. On April 24, 2018, plaintiff was placed on property restriction by defendant **Thomas** for allegedly the same conduct as stated in paragraph (42). **See** Exhibit "B"

44. On May 16, 2018 in quad 1 of "J" dormitory, defendant **Thomas** advised plaintiff that he would get him. Later that same day plaintiff was causing a disturbance on the wing but ceased his behavior, however defendant **Thomas** still ordered his staff to apply chemical agents into plaintiff's cell.

45. From my understanding and belief, defendant **Thomas** has a personal vendetta against the plaintiff due to the fact's stated in paragraph's (42-44).

46. Plaintiff filed grievances on defendant **Thomas** prior to and after these events, however, defendant's **Jones** and **Coker** ignored plaintiff's grievances by not reprimanding defendant **Thomas** or the other defendant's in this cause of action to deter their subordinates from doing these acts in the future.

47. The Department of Corrections requires all employees to familiarize themselves with all rules and regulations pertaining to their positions and duties requires that employees abide by these rules and regulations.

48. Plaintiff has exhausted all available administrative remedies. **See** Exhibit "C'

## VI. STATEMENT OF CLAIMS

Plaintiff realleges and incorporates by reference paragraph's (1-47):

1. The actions of defendants **Marchant**, **Noles**, and **Thomas** in depriving the plaintiff of basic human needs while housed in confinement, without penological justification, were done maliciously and constituted "cruel and unusual punishment" which amounts to the unnecessary and wanton infliction of pain" in violation of the **8th Amendment** of the United States Constitution thereby causing plaintiff pain, suffering, physical injury, and emotional distress.

2. The actions of defendants **Strawn**, **Dawsey**, and **Jackson** who had knowledge that plaintiff was being deprived of basic human needs but failed to take reasonable measures to abate these conditions, constituted "deliberate indifference" which allowed the "unnecessary and wanton infliction of pain, in violation of the **8th Amendment** of the United States Constitution thereby causing plaintiff pain, suffering, physical injury, and emotional distress.

3. The actions of defendants **Thomas** and **Anthony** in using physical force against the plaintiff without need or provocation were done maliciously and sadistically and amounted to "excessive force" and constituted "cruel and unusual punishment" in violation of the **8th Amendment** of the United States Constitution thereby causing plaintiff pain, suffering, physical injury, and emotional distress.

4. The actions of the defendants **Jones** and **Coker** in failing to take disciplinary action to curb the known pattern of abuse by defendant **Thomas** that they had knowledge of via grievances, constituted " deliberate indifference" to plaintiff and other prisoner's safety and contributed to and proximately caused the above described violations, in violation of the **8th Amendment** of the United States Constitution thereby causing plaintiff pain, suffering, physical injury, and emotional distress.

## VII. RELIEF REQUESTED

1. A **Declaratory Judgement** that the acts and omissions described herein violates plaintiff's rights under the Constitution and laws of the United States.

2. Granting plaintiff compensatory and punitive damages in the amount of **$5.4 million** against defendants.

3. A jury trial on all issues triable by a jury.

4. Recovery of costs in this suit.

5. Any additional relief this court deems just, proper, and equitable.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENT OF FACTS, INCLUDING ALL CONTINUATION PAGES ARE TRUE AND CORRECT.

Dated this 21ˢᵗ day of May, 2019

                                      Respectfully submitted,

                /s/

                                        Robert J. Keaton
                                        DC# R38757

I DECLARE OR CERTIFY, VERIFY, OR AFFIRM UNDER PENALTY OF THE PERJURY  THAT THIS COMPLAINT WAS DELIVERED TO PRISON OFFICIALS FOR MAILING ON:

Dated this 21ˢᵗ day of May, 2019

                                      Respectfully submitted,

                /s/

                                        Robert J. Keaton
                                        DC# R38757
                                        Suwannee C.I-Main unit
                                        5964 U.S Highway 90
                                        Live Oak, FL 32060

Pursuant to <u>Houston V. Lack</u>, 487 U.S 266 (1988); the date stamped is the date filed.

11.

# EXHIBIT "A"

State of Florida
Department of Corrections
Wakulla Correctional Institution-Main Unit
PROPERTY RESTRICTION FORM

Inmate Name:   Keaton, Robert_____        DC#:  R38757_____

Date Restricted:   ____05/3/2018_____        Shift:   ____B____        Dorm/Assignment: J2-103L

**Reason for Restriction On May 3, 2018 at approximately 5:00pm, I Captain Tarlos Thomas was summons to confinement by Sergeant Cedric Anthony due to Inmate Keaton, Robert#R38757 covering his cell window with his personal pictures. I issued multiple verbal orders to inmate Keaton to get up and remove the pictures from the window. Inmate Keaton refused all orders given. Inmate Keaton was placed in hand and leg restraints without incident and escorted to the shower cell.   Due to Inmate Keaton use of his personal pictures to cover his cell window, Duty Warden K. Marchant was notified and authorized inmate Keaton to be placed on property restriction and remain on this status from 05/3/2018 at 6:00p.m. until 05/6/2018 at 6: 00p.m**

**Property Restricted**:  All personal property, state issued blues, linens, mattress and blanket were removed from Inmate Keaton's cell in order to bring him into compliance. He will be reassessed after 72 hours and the Warden will advise if further restrictions are necessary.  He was left with his state issued boxers and shirt. The property restriction will be from May 3, 2018 – May 6, 2018. This was noted on Inmate Mason' DC6-229 and DC6-229B.

  _Captain T. Thomas_____        _05/3/2018_____
Shift Supervisor                                Date

  _Colonel Timothy Noles_____        _05/3/2018___        __X____   _____
Correctional Officer Chief                    Date                        Approved.    Denied

Comments:   *At no time will this inmate be left without means to cover himself*
_____

_____        _____        _____  _____
Warden                                          Date                        Approved.    Denied

Comments:

| Items Returned | Date | Shift OIC |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

This form is to be completed on all inmates that are placed on property restriction for security reasons. This form will not apply to items or property restricted by Mental Health or Medical Personnel for suicide watch or Alternative Housing. All property restricted and returned must also be documented on the inmate DC6-229. Items will be returned to the inmate when no further behavior or threat of behavior occurs that led to the restriction. This review will be conducted within 72 hours of the restriction.

# EXHIBIT "B"

State of Florida
Department of Corrections
Wakulla Correctional Institution-Main Unit
PROPERTY RESTRICTION FORM

Inmate Name: __Keaton, Robert_____ DC#: _R38757_____

Date Restricted: ___04/24/2018_____ Shift: ____B____ Dorm/Assignment: J2-103L

**Reason for Restriction:** On April 24, 2018 at approximately 3:30pm, I Captain Tarlos Thomas was summons to confinement by Sergeant Cedric Anthony due to Inmate Keaton, Robert#R38757 covering his cell window with his personal books and bed sheets. I issued multiple verbal orders to inmate Keaton to get up and remove the books and sheets from the window. Inmate Keaton refused all orders given by not saying a word. I then reached my hand inside of the cell through the food flap and was able to remove a few of the books from the window, so I could get a visual inside the cell. I observed Inmate Keaton laying on his bunk not moving and not responding to any orders. I then alone with confinement staff breached the cell door of J2-103 where Inmate Keaton is housed the conduct a wellness check. Inmate Keaton was placed in hand and leg restraints without incident and escorted the J-Dorm medical room to be seen by on due staff. Due to Inmate Keaton use of his personal books and state sheets, Colonel Timothy Noles was notified and authorized inmate to be placed on property restriction and remain on this status from 04/24/2018 at 4:30p.m. until 04/27/2017 at 4: 30p.m

**Property Restricted:** All personal property, state issued blues, linens, mattress and blanket were removed from Inmate Keaton's cell in order to bring him into compliance. He will be reassessed after 72 hours and the Warden will advise if further restrictions are necessary. He was left with his state issued boxers and shirt. The property restriction will be from April 24, 2018 – April 27, 2018. This was noted on Inmate Mason' DC6-229 and DC6-229B.

  Captain T. Thomas_____          __04/24/2018____
Shift Supervisor                        Date

  Colonel Timothy Noles_____          __04/24/2018____    __X____  _____
Correctional Officer Chief              Date                Approved.  Denied

Comments: *At no time will this inmate be left without means to cover himself*
_____

_____          _____    _____  _____
Warden                                Date           Approved.  Denied

Comments: _____

| Items Returned | Date | Shift OIC |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

This form is to be completed on all inmates that are placed on property restriction for security reasons. This form will not apply to items or property restricted by Mental Health or Medical Personnel for suicide watch or Alternative

# EXHIBIT "C"

**INMATE REQUEST**

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

Mail Number: _____
Team Number: _____ 3 _____
Institution: Wakulla C.I. - Annex

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☑ Security | ☐ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name Robert J. Keaton | DC Number R38457 | Quarters J2103 | Job Assignment N/A | Date 5/8/18 |
|---|---|---|---|---|---|

**REQUEST**                                     Check here if this is an informal grievance ☑

On May 3, 2018 I was placed on Property Restriction for Allegedly Covering My Cell Door Window with My Personal Pictures. All of My Personal Property, State Issued Blues, Linens, Mattress and Blanket were Removed From My Cell (J2103). Per Ch. 33-602.220(d)(c) F.A.C. and Ch. 33-602.222 (d)(c) F.A.C. "Clearly" States That Only "Items of Bedding" And Not My State Issued Mattress are To Be Removed From My Cell. All Other Items Remain were In Compliance However, Denial Of An Inmate Of A State Issued Mattress, Which Is Not In Accordance With the Above Stated Rules, Subsequently Results In A Violation Of The 8th Amendment Of The U.S. Constitution. This Property Restriction Also Exceeded 72 Hours.

                            **Remedy**

For All Staff Involved, I Ask That Whatever Reprimand Is Deemed Appropriate. I Also Ask That All Video & Audio Be Saved For Future, Litigation Purposes: J Dorm Quad 2 4/24/18 - 4/xx/18 And 5/3/18 - 5/7/18 As Well As Footage From Camcorder On 5/3/18, Front Desk - Dorm 5/3/18 - These Call

All requests will be handled in one of the following ways: 1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.

| Inmate (Signature): *(signature)* | DC#: R38457 | **RECEIVED** |
|---|---|---|

DO NOT WRITE BELOW THIS LINE

**RESPONSE**  *Capt. Thomas*          DATE RECEIVED: _____

**MAY 11 2018**
Wakulla Grievance Office
Wakulla Correctional Institute

182-1805-0089

Due to you covering your cell window with personal and state property making it hard for staff to see inside your cell. Therefore all personal and state issued property was removed from your cell for 72 hours. But at no time were you with out means to cover yourself.

[The following pertains to informal grievances only:

Based on the above information, your grievance is ___Denied___ (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): Capt. T. Thomas | Official (Signature): *(signature)* | Date: 5-15-18 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

**MAY 17 2018**

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Incorporated by Reference in Rule 33-103.005, F.A.C.

**PART B - RESPONSE**

| KEATON, ROBERT | R38757 | 1806-118-006 | WAKULLA C.I. | I1106S |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated. An investigation reveals the following:

This issue was adequately addressed by Captain Thomas at the informal level, grievance log # 122-1805-0089.

Based on the foregoing, your Request for Administrative Remedy is D E N I E D.  You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachment(s) as required by Chapter 33-103, and forwarding to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida  32399-2500.

Responding Employee: L. Robison, Grievance Coordinator

Signature of Representative: J. Coker, Warden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

MAILED

JUN 0 7 2018

ASSISTANT WARDEN

FLORIDA DEPARTMENT OF CORRECTIONS
REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☑ Warden   ☐ Assistant Warden   ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

| Keaton | Robert | S | R38454 | Wakulla C.I. - Annex |
|--------|--------|---|--------|----------------------|
| Last | First | Middle Initial | DC Number | Institution |

1806-118-006

**Part A – Inmate Grievance**

This Is An Appeal Of My Informal Grievance That Was Denied. See Attached Grievance. Log# 122-1805-0089

**FACTS**

On May 3, 2018 I was placed on Property Restriction by Capt. Thomas for allegedly covering my cell door window with my personal pictures. This Property Restriction was approved by K. Marchant and Coun. Notes. All of my personal property, state issued blues, linens, blanket, and state issued mattress were removed from my cell (3210). On 5/3/18 or 5/4/18, Capt. Strand did a round in confinement and did not issue me a mattress. On 5/4/18, I spoke with Lt. Jackson at my causeover and he refused to give me a mattress. Also, on Capt. Pardey shift that weekend (5/4/18 - 5/6/18) during his daily rounds, he also failed to issue me a mattress. Due to me just coming off "step" a few days earlier (4-24-18 - 4/24/18) with the same precautions, I felt it would be a wise decision to sleep on the concrete floor for better warmth than sleeping on a steel bunk. Also to help alleviate the lower back pain steel bunk caused. However, on 5/6/18, I suffered a seizure and hit my left eye against the footlocker, seriously injuring my left eye. This took place between 1-3am that morning. After being seen by medical, I was rolled back in a wheel chair and placed back in my cell. Me being deprived of a state issued mattress ultimately resulted in my current & back injuries. Per Ch.33-602.120(3)(a)F.A.C. & Ch.33-602.220(4)(x)F.A.C. "clearly" shows that only items of bedding and not my state issued mattress were to be removed from my cell. All other items were removed in accordance. These actions by staff, subsequently results in a violation of my 8th Amendment Right to the U.S. Constitution. This Property Restriction also exceeded 72 hours, also causing me mental & emotional pain as well.

**REMEDY**

I ask that all staff involved, that whatever reprimand i.e. deemed appropriate. Also, that all footage and audio (See Informal Grievance - Attached) be saved for future litigation. Also $1,000,000 in monetary damages.

| May 31, 2018 | Robert Keaton    R38454 |
|--------------|--------------------------|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

0  /  X X X X X X
                    Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

JUN 1 2018        Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____    Institutional Mailing Log #: _____
              Wakulla Assistant Warden
                Program/Grievance

                                                        (Received By)

'O.H

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---------------|----------------------|----------------|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)          Incorporated by Reference in Rule 33-103.006, F.A.C.

## PART B - RESPONSE

| KEATON, ROBERT | R38757 | 18-6-27640 | UNION C.I. | V1101L |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your administrative appeal has been reviewed and evaluated. The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.

Your administrative appeal is denied.

W. Millette

---

| | *W. Millette* | 7/10/18 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

**FLORIDA DEPARTMENT OF CORRECTIONS**
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

☐ **Third Party Grievance Alleging Sexual Abuse**

JUN 28 2018

TO: ☐ Warden   ☐ Assistant Warden   ☑ Secretary, Florida Department of Corrections

From or IF Alleging Sexual Abuse, on the behalf of:

| Keaton | Robert | J | R38757 | Union C.I. |
|---|---|---|---|---|
| Last | First | Middle Initial | DC Number | Institution |

18-6-27640

**Part A – Inmate Grievance**

This Appeal / Grievance Is In Reference To Part B Response Of My Formal Grievance. I Find This Response To Be Contrary To The **FACTS** Of This Grievance. Had This Matter Been Investigated (As Stated At Top Of Part B Response Log# 1806-118-006) It Would Have Shown That My Allegations Are Indisputable Evidence Of A Violation Of My 8th Amendment To The U.S. Constitution. I Provided Sufficient Evidence In Both Informal (Log# 122-1805-0089) & Formal (Log# 1806-118-006) Grievances To Be Adequately Investigated. What This Shows Is That No One Wants To Accept Responsibility For Violating My Civil Rights. I Never Covered My Window On 5/3/18 With Any State Issued Property To Warrant The Confiscation Of My State Issued Mattress Which Resulted In My Documented Injuries. I Have With This Grievance, Officially Exhausted My Administrative Remedies. To Better Assist You, I Have Agreed To (1) 30 Day Extension To Substantiate My Allegations.

Remedy

The Same As Enunciated In Log# 1806-118-006. Both Informal & Formal Are Attached.

*Note: Even Though I Am Still In The Allotted Time Frame As Enunciated In Ch. 33-103.011(L)(c) F.A.C. However, I Did Not Receive Formal Response Until 6/21/18 between 8:30pm & 10:30pm - Camera In V-Dorm Quad 1 Cell 1101 Will Prove This.

| 6/21/18 | Robert Keat R38757 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**

1, Robert Keato
# / Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled to Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

| Submitted by the inmate on: 6-22-8 | |
|---|---|
| (Date) | Institutional Mailing Log #: 129468 |

(Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

06H
1806-118-006

DC1-303 (Effective 11/13)   Incorporated by Reference in Rule 33-103.006, F.A.C.

# INMATE REQUEST

**STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS**

Mail Number: _____
Team Number: _____
Institution: _____

**TO:**
**(Check One)**

☐ Warden
☐ Asst. Warden
☐ Classification
☑ Security
☐ Medical
☐ Mental Health
☐ Dental
☐ Other _____

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Robert Keaton | R38757 | V1101L | CM | 6/17/18 |

## REQUEST

Check here if this is an informal grievance ☑

On June 14, 2018 After Leaving The Infirmary At Wakulla C.I. Main Unit, I Was Black Boxed & Shackled And Escorted To J Dorm At The Annex. I Was Immediately Escorted To Quad 2, But Before I Could Enter The Quad I Declared A Medical Emergency And Sat On The Ground. Sgt. Anthony Stated "We Been Waiting For You" I Responded With "Fuck You". Sitting On Ground Waiting For Them To Take Me To The Medical Room, Capt. Thomas Arrived And They Attempted To Drag Me In To The Quad. When The Inmates On The Wing Seen What Was Happening, They Began To Yell And Kick On Doors. While I Was On The Ground Making No Sudden Movements, Sgt. Anthony Dove On Me. Next, They Dragged Me To The Holding Cell Choking Me With My Shirt. Once Inside The Holding Cell, I Laid Down With My Feet Out Of The Door So They Couldn't Close It. They Entered The Cell To Try To Lift Me Up, Hitting My Head Several Times On The

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

| Inmate (Signature): | DC#: R38757 |
|---|---|

---

**DO NOT WRITE BELOW THIS LINE**

Security

**RESPONSE**   213-1806-0171                    **DATE RECEIVED:** 6/18/18

Received, Reviewed and evaluated. The issue of your complaint has been referred to the office of the Inspector General office for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. This may or may not result in a personal interview with you. No action has been initiated, you may consider your grievance approved from that stand point. This does not constitute substantiation of your allegation.

If the following pertains to informal grievances only:

Based on the above information, your grievance is ☐ (Returned, Denied, or Approved). If your informal grievance is denied, **Approved**. you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.).

| Official (Print Name): S. Andriulevich | Official (Signature): S. Andriulevich | Date: 6/19/18 |
|---|---|---|

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)                    10a

Incorporated by Reference in Rule 33-103.005, F.A.C.

STEEL BENCH. THEY WERE ATTEMPTING TO LIFT MY LEGS UP SO THAT THEY COULD CLOSE THE DOOR. IN DOING THIS, THEY FAILED ON ABOUT 5-7 ATTEMPTS DUE TO THE FACT THAT THEY COULD NOT EXIT CELL BEFORE I STUCK MY LEGS OUT THE DOOR. THEY INTENTIONALLY SLAMMED THE DOOR ON MY LEGS EVERY TIME THEY FAILED. DURING ONE OF THESE ATTEMPTS, SGT. ANTHONY KICKED ME IN MY FACE, HITTING MY INSURED LEFT EYE I JUST HAD SURGERY ON, I DON'T THINK IT WAS INTENTIONAL, BUT WHEN CAPT. THOMAS PUT HIS FOOT IN MY CHEST, THAT WAS INTENTIONAL. BOTH OF THEM TAKING TURNS TO SLAM MY LEGS IN THE DOOR WAS INTENTIONAL AS WELL BECAUSE MY FEET WERE CLEARLY OUT THE DOOR BEFORE THEY COULD ATTEMPT TO CLOSE IT. DUE TO THESE ACTIONS, I RECEIVED MINOR WOUNDS TO BOTH MY LEGS AND ANKLES CAUSING THEM TO SWELL. BOTH MY WRISTS WERE SWOLLEN AS WELL. ONLY WHEN MAJOR HAWKINS CAME IN DID CAPT. THOMAS ASK ONE OF HIS OFFICERS TO GRAB THE USE OF FORCE CAMERA! NEARLY 10 MIN AFTER THE FORCE INITIALLY BEGAN. I WAS THEN ESCORTED TO A CELL IN QUAD 2 AND LEFT IN BLACK BOX & SHACKLES UNTIL MY EMERGENCY TRANSFER. UPON LEAVING, I WAS EXAMINED BY NURSE GUZMAN WHO DOCUMENTED MY INJURIES. CAPT. THOMAS AND SGT. ANTHONY BOTH KNOW I AM A GREAT LITIGATOR, SO THEY ATTEMPTED TO KEEP AND DESTROY ALL MY PROPERTY ~~THAT~~ THAT I HAD WHEN I CAME FROM THE INFIRMARY. ON MY WAY LEAVING I KEPT ASKING FOR IT & THEY SAID NOTHING, ONLY WHEN I SAT ON THE GROUND OUTSIDE THE DORM, MAJOR HAWKINS WAS SUMMONED AGAIN AND ORDERED THEM TO GO GET MY PROPERTY.

## REMEDY

WHATEVER REPRIMAND IS DEEMED APPROPRIATE. I ALSO ASK THAT THE AUDIO & VIDEO FROM QUAD 2, QUAD 1, AND QUAD 3 AS WELL AS THE CAMERA IN THE CORNER OF THE FRONT DOOR OF 2 DORM BE STORED FOR FUTURE LITIGATION PURPOSES. THE CAMERA AT THE DOOR WILL SHOW THEY REPEATEDLY SLAMMED MY LEGS IN THE DOOR. ALSO PLEASE SAVE THE FOOTAGE FROM THE USE OF FORCE CAMERA, THIS IS HIGHLY VALUABLE AS WELL TO SUPPORT MY VERSION OF THE FACTS. THIS ALL OCCURRED ON 6/14/18 BETWEEN 12:00 PM & 5:00 PM.

UNDER FLA. STAT 92.525, I STATE THE ABOVE FACTS AS TRUE AND CORRECT OR CHARGE ME WITH PERJURY!

6/17/18

213-1806-0171

Robert J. Keaton DC-R58757
Suwannee Correctional Institution - Main Unit
5964 U.S. Highway 90
Live Oak, FL 32060

Mailed From State
Correctional
Institution
Suwannee C.I.


U.S. POSTAGE >> PITNEY BOWES

ZIP 32060   $ 001.60⁰
02 4H
0000347568 MAY 22 2019

MAY 2 8 2019

United States Courthouse
111 N. Adams St.
Tallahassee, FL 32301-7730

Provided to Suwannee
Correctional Institution on

MAY 2 1 2019